| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br><br>Court Address: 1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED<br>January 22, 2026 12:49 PM<br>CASE NUMBER: 2026CV30150 |
| COOPERREILLY INVESTMENT FUND, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MAVERIX LLC, MAVERIX BROADBAND, INC., and VIATH, INC.,<br><br>Defendants. | ▲ COURT USE ONLY ▲<br><br>Case Number:<br><br>Division: |
| *Attorneys for CooperReilly Investment Fund, LLC*:<br>Peter Q. Murphy (23328)<br>Patrick R. Akers (54803)<br>MARKUS WILLIAMS LLC<br>1775 Sherman Street, Suite 1950<br>Denver, Colorado 80203<br>(303) 830-0800<br>(303) 830-0809 (facsimile)<br>pmurphy@markuswilliams.com<br>pakers@markuswilliams.com | |

**ORDER GRANTING**
**VERIFIED MOTION FOR EX PARTE APPOINTMENT OF RECEIVER**

THIS MATTER comes before the Court on the Verified Complaint for Appointment of Receiver and Judgment[1] (the "**Complaint**") and Verified Motion for Ex Parte Order Appointing Receiver (the "**Motion**") filed by Plaintiff CooperReilly Investment Fund, LLC ("**Plaintiff**"). The Court, having reviewed the Complaint and Motion, and being fully advised in the premises, and for o

1 Capitalized terms not defined herein shall have their same meaning as set forth in the Complaint.

EXHIBIT 1

**HEREBY FINDS:**

A. The Court has jurisdiction over Maverix LLC and Maverix Broadband, Inc. (together, "**Borrowers**") and venue is proper pursuant to C.R.C.P. 98(a) and 98(c), and because Borrowers have consented to such jurisdiction and venue.

B. Borrowers have defaulted under the Loan Documents.

C. The collateral that is the subject of this case—consisting of all of Borrowers' assets—is more particularly described on Exhibit 1 attached hereto and incorporated herein (the "**Collateral**").

D. Borrowers operate a telecommunications and broadband company, which provides internet access or Wide Area Network connectivity to residential and business locations through the construction and operation of fiber optics or fixed wireless, whether at a retail or wholesale level, and similar services.

E. As set forth in detail in the Complaint and Motion, the Second Forbearance Agreement provided for the ex parte appointment of a receiver without notice to Defendants in the event of default. Such provisions are enforceable. *See* C.R.S. § 38-38-602(3); *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Denver Hotel Ass'n Ltd. P'Ship*, 830 P.2d 1138, 1139–40 (Colo. App. 1992).

F. On or around February 3, 2025, Borrowers employed Hadley Ford of Griscom Advisors, LLC to market and sell their business or assets.

G. Since his engagement, Mr. Ford actively marketed Borrowers' business and assets. As a result of these efforts, Borrowers received numerous letters of intent to purchase Borrowers' business or assets, including letters of intent from BAM Broadband, Frankford Holdings LLC, IdeaTek Systems, Intrepid Fiber Networks, Mac Mountain, Phire Link, VERO Networks, Visionary Communications, LLC, and Wi-Fiber Networks. None of these expressions of interest resulted in a binding purchase agreement for the sale of Borrowers' business or assets.

H. Pursuant to the Second Forbearance Agreement, Borrowers agreed, in part, to sell their business or assets pursuant to a strictly defined Sale Process and Bid Procedures.

I. Borrowers disseminated the Bid Procedures to Potential Bidders.

J. Borrowers did not receive any Qualified Bids by December 5, 2025 at 4:00 PM MT, the deadline on which to submit a completed bid and an executed transaction document.

K. On December 11, 2025, and pursuant to the Bid Procedures, Plaintiff timely submitted to Borrowers its Asset Purchase Agreement (the "**APA**"), pursuant to which Plaintiff seeks to purchase certain of Borrowers' assets.

L. Borrowers failed to execute the APA, deliver a binding purchase agreement, or

conduct the required Auction on December 12, 2025 at 10:00 AM MT.

M. The marketing efforts voluntarily undertaken by the Borrowers in connection with the sale of Borrowers or their assets were adequate and sufficient under the circumstances, and all potential purchasers or interested parties had a reasonable opportunity to submit bids and participate in the Sales Process.

N. After an extensive marketing and Sales Process, the only binding offer received by Borrowers is the APA.

O. Plaintiff intended to purchase and receive Borrowers' assets subject to the APA in a manner as to avoid disrupting internet services to Borrowers' end users.

P. The allegations in the Complaint and Motion establish a right to the appointment of a receiver to, among other things, take possession and control of the Collateral; execute and, if necessary, negotiate changes to, amend, or modify the APA; and conclude the sale of the Collateral pursuant thereto.

Q. The foregoing factors listed meet the statutory requirements for the appointment of a receiver ex parte under C.R.S. § 38-38-601 and C.R.C.P. 66.

R. The appointment of a receiver is necessary to protect the Collateral and to administer and conclude the sale of the Collateral.

S. Sonoran Capital Advisors ("**Sonoran**"), with a business address of 1733 North Greenfield Road, Suite 104, Mesa, Arizona 85205, is suitable to be appointed as receiver for the Collateral.

T. Sonoran is experienced in the administration of receivership estates, foreclosures, and credit workouts, and are available to assist in performing the proposed duties efficiently and economically.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

**Appointment of Receiver and Custodian; Notice of Receivership**

1. Sonoran (the "**Receiver**") is hereby appointed as receiver and custodian over Borrowers and the Receivership Property (as defined below) (collectively, the "**Receivership Estate**"), subject to the supervision and exclusive control of this Court, for a period commencing on the date of this Order and ending upon termination of such appointment by further order of this Court.

2. Bryan Perkinson shall serve as the primary agent of the Receiver for the purposes of this Order, the Receivership Estate, the Receivership Property (defined below), and this action.

3. Based on the qualifications of the Receiver, the Receiver is not required to post a bond. Plaintiff shall give notice of the appointment of Receiver by providing a copy of this Order to Borrowers as provided in C.R.C.P. 4. The Receiver shall provide written notice of this action to any persons in possession of the Collateral affected by this Order as provided in C.R.C.P. 66(d)(3).

4. Within seven (7) days of this Order, the Receiver shall execute and file an Oath of Receiver with this Court, accepting the appointment and agreeing to fully and faithfully exercise all powers and discharges under this Order, any subsequent directives of this Court, and applicable law.

**The Receivership Property; Receiver's Powers and Duties; and Cooperation**

5. The "**Receivership Property**" shall consist of Borrowers and their ongoing business and the Collateral and the earning, income, rents, issues, profits, and proceeds thereof. The Receiver shall take and have complete and exclusive possession, custody, and control of the Receivership Property.

6. The appointment of the Receiver shall not be deemed a "change in control" or "change in ownership" of Borrowers under any contract, franchise agreement, intellectual property, lease, license, permit, or other matter relating to the operation of Borrowers' business or Collateral, or an assignment of the same.

7. The Receiver's possession of the Receivership Estate is exclusive of any interest of Borrowers and of any person with any legal or beneficial interest in the Receivership Estate, and of all persons acting in concert or participation with them.

8. All debts, liabilities, or obligations incurred by the Receiver in the course of this receivership, including the operation or management of the Receivership Estate, whether in the name of the Receiver, the Collateral, or the Receivership Estate, shall be the debt, liability, and obligation of the Receivership Estate only and not a personal liability of the Receiver or any employee or agent of the Receiver.

9. The Receiver is hereby directed and empowered to take and continue to take from Borrowers, and their current or former accountants, agents, attorneys, directors, employees, managers, officers, representatives, and all persons in active concert and participation therewith, immediate possession of the Receivership Property, and all things related thereto, including, without limitation, income, issues, payments, profits, rents, revenues, and royalties, and any personal property used or associated therewith, regardless of where such property is located, including, without limitation, accounts, including, without limitation, those accounts which may be in the names of third parties to the extent that they contain payments or proceeds from credit card issuers made on behalf of the customers, accounts receivable, agreements, appliances, bank accounts, chattel paper, checks, computer servers, computers, condemnation awards, contracts, construction materials, customer lists, deposit accounts, deposits, documents, drafts, electronic records, equipment, files, financial documents, fixtures, franchise agreements, furnishings,

furniture, general intangibles, goods, instruments, inventory, insurance payments, investment property, lease payments, leases, licenses, merchant accounts, notes, occupancy agreements, operating accounts, options, permits, records, rental payments, reports, security deposits, software, studies, supplies, websites, and other articles and things of any and all kinds and types associated or used with the Receivership Property.

10. The Receiver is further empowered to exclude Borrowers and their accountants, agents, attorneys, directors, employees, managers, and officers from such possession and all such persons are ordered to deliver to the Receiver all of the Receivership Property. The Receiver shall operate the Receivership Property at the level the Receiver reasonably deemed appropriate, which may be at a limited-service level or may include suspension of operations, and collect the income, profits, rents, revenues, and other benefits from the management, operation, or sale of the Receivership Property, all of which shall be held and disbursed pursuant to this Order.

11. The Receiver shall have all of the authority, duties, powers, and rights of a general receiver and custodian under Colorado law and those reasonable necessary to operate the Receivership Property and to accomplish the purposes of the Receivership Estate, including, without limitation, to do the following without further order of this Court:

(a) conduct Borrowers' business and collect, control, conserve, maintain, manage, operate, and protect the Receivership Property;

(b) collect any information as to the assets, liabilities, or equity interests of Borrowers, including, without limitation, conducting a full inventory of all personal property comprising the Receivership Property, if necessary;

(c) change any or all access, locks, and possession of passkeys or passwords or other means of access or entry to the Receivership Property, including, without limitation, tangible and intangible assets such as code, platforms, and software;

(d) retain security personnel as necessary to secure the Receivership Property;

(e) take possession of all bank accounts containing funds associated with the Receivership Property, including all merchant accounts, whether in the name of Borrowers or in the names of other third parties, to the extent that they contain payments or proceeds from credit card issuers made on behalf of the customers and to open, transfer, and change all bank and trade accounts relating to the Receivership Property, so that all such accounts are in the name of the Receiver; and to make withdrawals from and issue checks upon such accounts to fund the operations of the Receivership Estate;

(f) assert causes of action, claims, defenses, or rights that relate to the Receivership Property, including, without limitation, asserting claims for equitable relief and settling mechanics' liens, subject to Plaintiff's approval, in the Receiver's own name or in the name of the Receivership Estate. For the avoidance of doubt, the Receiver shall

not substitute as a party on behalf of Borrowers herein and Borrowers are solely responsible on their own for responding to any pleadings, motions, or discovery requests therein;

(g) enforce or cause Borrowers to enforce any and all payment obligations owed to Borrowers, including, without limitation, accounts, agreements, contracts, debts, mortgages, and promissory notes;

(h) investigate, pursue, prosecute to judgment, compromise, or settle any and all claims that Borrowers have in connection with the Receivership Property or that the Receiver, in its capacity as receiver over the Receivership Property, may have against third parties, including, without limitation, fraudulent conveyance or transfer claims against insider or non-insider parties;

(i) use, lease, or sell the Receivership Property in the ordinary course of Borrowers' business;

(j) collect deposits, fees, rents, income, issues, profits, royalties, payments and revenues of any kind or nature whatsoever relating to or arising in connection with the Receivership Property now due or which may hereafter become due and to immediately take whatever steps are reasonably necessary to secure all such income;

(k) incur and pay the ordinary course expenses related to the Receivership Property, including, without limitation, insurance, taxes, utility charges, and other expenses incurred in managing and operating the Receivership Property, provided, however, that the Receiver shall obtain prior written approval of Plaintiff for any such single expense in excess of $10,000.00, which approval shall be deemed granted as a matter of course, unless an objection to such expense is given to the Receiver within five (5) business days after the giving of written notice by the Receiver of the proposed expense to Plaintiff and its counsel;

(l) pay prior ordinary course expenses incurred by Borrowers or any other person or entity charged with the responsibility of maintaining and operating the Receivership Property, if the Receiver believes such obligations are undisputed and reasonably necessary to the continued maintenance and operation of the Receivership Property;

(m) continue to employ, employ, or terminate any or all of Borrowers' accountants, agents, attorneys, board members, brokers, consultants, directors, employees, officers, managers, and representatives who the Receiver deems reasonably necessary or unnecessary to the operation and sale of the Receivership Property under such terms and conditions as the Receiver deems advisable, and in doing so, the Receiver shall not be bound by Borrowers' current employment contracts or employment benefits, practices, or policies;

(n) continue, enter into, extend, make, modify, negotiate, ratify, or renegotiate, any agreement, contract, franchise agreement, or lease related to the Receivership Property

as the Receiver reasonably deems appropriate and in the best interest of the Receivership Property; provided, however, no such agreement, contract, franchise agreement, or lease shall extend longer than sixty days beyond the termination of the Receivership Estate unless authorized by Plaintiff, which authorization shall be deemed denied unless consent is received by the Receiver within five (5) business days after giving written notice of such proposed agreement to Plaintiff and Plaintiff's counsel; if no consent is received by the Receiver within the five (5)-business-day period, the Receiver may file a motion with the Court seeking permission for such agreement, and Plaintiff shall have the time provided under C.R.C.P. 121 for a response;

(o) rescind or terminate any agreement, contract, franchise agreement or lease related to the Receivership Property as the Receiver reasonably deems appropriate and in the best interest of the Receivership Property;

(p) apply Borrowers' endorsement to any instrument received by the Receiver in the course of managing and operating the Receivership Property, and to execute in the names of Borrowers any and all reports or other documents required to be executed in connection with the performance of the Receiver's obligations under this Order and applicable law;

(q) cease operations of any and all of the Receivership Property as the Receiver reasonably deems appropriate and in the best interest of the Receivership Property, upon further order of the Court;

(r) administer and conclude the Sale Process (as defined in the Second Forbearance Agreement) within sixty (60) days from the date of this Order, subject to the Receiver's business judgment, including, without limitation, executing and, if necessary, negotiating changes to, amending, or modifying the APA;

(s) consummate and take all actions necessary to effectuate the APA, including without limitation, entering into any mutually agreeable ancillary documents and to execute those documents necessary to consummate the sale under the terms of the APA, to take any and all further actions necessary to consummate and perform under the terms of the APA, and act as signatory for Borrowers under the APA and any necessary ancillary documents;

(t) at closing or immediately after closing under the APA, the Receiver is authorized to pay all title fees, broker commissions, prorations, or other closing fees and costs, Receiver fees and costs, and liens in their order of priority in the Receiver's business judgment;

(u) apply for, obtain, transfer, or renew any and all franchise agreement, entitlement, license, or permit required for the operation of the Receivership Property;

(v) with respect to any activity or operation related to the Receivership Property and customarily conducted by Borrowers, and that may lawfully be conducted under a governmental license or permit, continue such activity or operation under the license or permit issued to Borrowers subject to compliance with the terms thereof;

(w) hire accountants, agents, attorneys, consultants, managers, officers, or other professionals as the Receiver believes are reasonably necessary to perform its duties as receiver, including, without limitation, those the Receiver deems necessary to assisting with executing and, if necessary, negotiating changes to, amending, or modifying the APA;

(x) pay Receiver's counsel at its customary hourly rate on a monthly basis for services rendered and expenses incurred, and to pay Receiver's other professionals under their respective customary terms;

(y) open new bank accounts in the name of the Receivership Estate for use by the Receiver or its designee, or to use existing checking and deposit accounts that Borrowers currently maintain and rename such accounts to reflect the interest of the Receivership Estate;

(z) receive and open all mail for and on behalf of Borrowers and access and obtain keys for all post office boxes for Borrowers;

(aa) obtain, maintain, or renew appropriate insurance coverages for the Receivership Property, Receivership Estate, and the Receiver, itself;

(bb) issue Receiver's Certificates to be added to the outstanding indebtedness of Borrowers for the purpose of maintaining and preserving the Receivership Property, payment of insurance and taxes, meeting working capital needs in excess of income, and satisfying administrative expenses, without further order of the Court, which Receiver's Certificates shall bear interest and which Receiver's Certificates shall be a lien and security interest in favor of Plaintiff and a preference claim upon the Receivership Property and shall be added to the outstanding indebtedness due under the Loan Documents, on such reasonable terms as may be mutually acceptable to the Receiver and Plaintiff;

(cc) copy or obtain an image of all of Borrowers' electronically stored information located on all computers, hard drives, or other mass storage devices without further order of the Court;

(dd) compel any person or entity by subpoena pursuant to the Colorado Rules of Civil Procedures, to give testimony or produce and permit inspection and copying of designated books, documents, electronically stored information, or tangible things with respect to the Receivership Property or any other matter that may affect the administration of the Receivership Estate;

(ee) generally do such other lawful acts as the Receiver reasonably deems necessary for the effective management and operation of the Receivership Property and to perform such other duties and functions as may from time to time be required and authorized by this Court, subject to applicable law; and

(ff) take any other actions that are usually and customarily taken by receivers or custodians.

12. The Receiver shall have no responsibility to administer any 401(k), dental insurance, flexible spending account, health insurance, pension, profit sharing, retirement, or other employee benefit plan.

13. Notwithstanding anything to the contrary contained in this Order, the Receiver shall not take any action with regard to ownership, operation, control, storage, generation, or disposal of (a) any substance deemed a "hazardous substance," "pollutant," "contaminant," or similar substance under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 to 9675; the Conservation and Recovery Act of 1976; the Solid Waste Amendments of 1984; the Superfund Amendments and Reauthorization Act of 1986; and any other amendments; or (b) any other chemical, toxins, pollutants, or substance defined as hazardous or dangerous to human health under any other federal, state, or local law, regulation, rule, or ordinance, including, without limitation thereto, petroleum, crude oil, or any fraction thereof (collectively, "**Hazardous Substances**"), without first applying for and obtaining an order of this Court specifically setting forth the action or actions proposed to be taken by the Receiver. Without first applying for and obtaining such an order of this Court, the Receiver shall have no ownership, control, authority, or power (neither shall Receiver have any obligation to exercise ownership, control, authority, or power) over the operation, storage, generation, or disposal of any Hazardous Substances. All decisions relating to the ownership, operation, control, storage, generation, and disposal of any Hazardous Substances shall be resolved by this Court.

14. The Receiver has the authority to access, obtain, and utilize all electronic login and password information for Borrowers and from any third party, including, without limitation, banking institutions, electronic payment platforms, emails systems, financial accounting systems, payroll processing services, and utility providers. This Order may be presented to any person, entity, or governmental agency as evidence of the Receiver's authority under this section, and all third parties shall comply with any request of the Receiver or its designee to provide physical and electronic access to Borrowers accounts and mail.

15. All income, issues, profits, rents, revenues, and other payments that are now or hereafter become due with respect to all or any portion of the Receivership Property, whether pursuant to oral or written agreements, shall be remitted on Borrowers' account directly to the Receiver. The Receiver is authorized and directed to collect, demand, and receive all proceeds from the operation of the Receivership Property, including, without limitation, all accounts, charges, fees, profits, or rents now due and unpaid or hereafter to become due.

16. Upon request of the Receiver, Borrowers are ordered to direct any person or entity liable for any payments to be paid to Borrowers to direct said payment to the Receiver. Such direction shall be in writing and approved by the Receiver. Upon receipt of a copy of this Order, any and all third parties who are obligated to pay Borrowers any amounts are hereby directed to make such payment directly to the Receiver. Notwithstanding the foregoing, should any third party obligated to make payments to Borrowers direct those payments to Borrowers rather than the Receiver, such payments shall be deemed to have been made payable to the Receiver, and such payments shall be immediately turned over to the Receiver's possession, custody, and control by any person or party receiving the same on behalf of the Receiver.

17. In order to exercise the authority conferred upon it under this order, the Receiver is hereby vested with the standing and all power and authority (but without the liability of or associated with, or obligation to act) that would or could be wielded by the directors, officers, or managers of Borrowers, including, without limitation, the power and authority to (i) execute documents, instruments, and resolutions in connection with any sale or finance transaction; and (ii) have and obtain access to communications, employee records, financial and accounting systems, reports, and other work product.

18. The Receiver shall disburse funds received on account of the Receivership Property in the following order of priority:

(a) first, to pay the fees and expenses of the Receivership Estate, including compensation of the Receiver, its counsel at their normal hourly rates, and compensation for any other professional retained by the Receiver;

(b) second, to pay the expenses of operating, maintaining, and managing the Receivership Property, including, without limitation, insurance, payroll, taxes, utilities, and other out of pocket expenses incurred by the Receiver in connection with the Receivership Property;

(c) third, to repay all sums borrowed by the Receiver from Plaintiff as advances or as evidenced by Receiver's Certificates;

(d) fourth, whenever sufficient funds are available for such purpose, to make principal and interest payments towards any loans which are secured by a lien on the Receivership Property, in the order of their priority. Any payment by the Receiver to Plaintiff or other secured creditors hereunder shall not constitute a cure of Borrowers' defaults; and

(e) fifth, to a fund to be held by the Receiver in an interest-bearing account, pending further order of this Court prior to any distribution to create a reserve for future Receiver's fees and expenses and operating expenses in an amount to be agreed to between the Receiver and the Plaintiff.

19. In the event there are insufficient funds to repay any Receivership Estate expense

as contemplated above, the Receiver shall have a lien encumbering the Receivership Property having a priority immediately senior to that of any other lien on or security interest in the Receivership Property and equal to those of any Receiver's Certificates issued pursuant to this Order. The Receiver is hereby authorized, but not required, to execute and record certificates of lien in the recorder's office for any county in which real property of Borrowers is located or UCC financing statements with the Colorado Secretary of State to put third parties on notice of such liens. The Receiver may release any such lien by executing and recording a certificate of release of lien or UCC termination statement. The Receiver shall be entitled to all expenses associated with enforcing such lien and such amount shall be secured by such lien.

20. Borrowers and all persons in active concert and participation with Borrowers, including, without limitation, their current and former accountants, agents, banks, directors, employees, managers, and officers, shall be and are hereby ordered to:

(a) deliver immediately to the Receiver or its agents all Receivership Property, including, without limitation, all income, issues, payments, profits, rents, revenues, and royalties, and any and all personal property used or associated therewith, including all keys, usernames, and passkeys or passwords, regardless of where such property is located, including, without limitation, architecture documents (which show the platforms and systems are built and operate), tech stacks (which show interoperability of the system and how the systems operate), and data (e.g., maps and integration), as well as accounts, including, without limitation, those accounts which may be in the names of third parties to the extent that they contain payments or proceeds from credit card issuers made on behalf of the customers, accounts receivable, agreements, appliances, bank accounts, chattel paper, checks, computer servers, computers, condemnation awards, contracts, construction materials, customer lists, deposit accounts, deposits, documents, drafts, electronic records, equipment, files, financial documents, fixtures, franchise agreements, furnishings, furniture, general intangibles, goods, instruments, inventory, insurance payments, investment property, lease payments, leases, licenses, merchant accounts, notes, occupancy agreements, operating accounts, options, permits, records, rental payments, reports, security deposits, software, studies, supplies, websites, and other articles and things of any and all kinds and types associated or used with the Receivership Property;

(b) continue to deliver immediately to the Receiver all collections on accounts and credit card receivables, books, lease payments, rental payments, rents, security deposits, and other records relating to the operation, maintenance, and management of the Receivership Property;

(c) disclose to the Receiver any assets Borrowers believe are not part of the Receivership Estate;

(d) upon request, endorse over to the Receiver any and all checks, depository accounts, and drafts of the Receivership Estate;

(e) permit the Receiver to carry out its duties hereunder without interference;

(f) when necessary or requested, to explain the operation, maintenance, and management of the Receivership Property and Borrowers' business to the Receiver or its agents;

(g) safeguard and preserve against destruction of all business records and documents relating to the Receivership Property and Borrowers' business in whatever form, including, without limitation, all electronic records, emails, and hard-copy documents until delivered to the Receiver; and

(h) cooperate with the Receiver in carrying out the Receiver's duties under this Order.

21. The Receiver is immediately vested with (and Borrowers shall immediately deliver) the books and records with respect to the operation of the Receivership Property, including, without limitation, any and all information related to: amounts paid by obligors of Borrowers; liens, encumbrances, and other interests against or affecting the Receivership Property; property or other taxes owed by Borrowers; all types of insurance affecting the Receivership Property; drawings, plans, specifications, and surveys, if any, relating to the Receivership Property; keys or access codes related to the Receivership Property; all computers, computer systems, software necessary to review, understand, print, and deal with computerized records, and all access codes and passwords associated therewith; all operating statements of Borrowers; all maintenance manuals related to the Receivership Property; all repair and maintenance records for the Receivership Property; all intellectual property, software code, or work product associated with the Receivership Property; and all other aspects of the Receivership Property, including, without limitation, operating agreements and amendments thereto, and other property and the operation and management thereof (collectively, the "**Books and Records**"). The Receiver is authorized to recover, without further order of this Court, the Books and Records in the possession of third parties, including, without limitation, internet and cloud hosting services and website domain hosting services.

22. Except as may be expressly authorized by this Court hereafter upon notice and a hearing, Borrowers, their agents, directors, employees, managers, officers, representative, or anyone claiming by, through, or under the mare enjoined from:

(a) other than under the supervision of the Receiver, collecting any accounts, issues, profits, rents, or revenues from the Receivership Property or withdrawing funds from any bank or other depository account relating to the Receivership Property or Borrowers' business;

(b) terminating or causing to be terminated any agreement, contract, lease, license, or permit relating to or comprising the Receivership Property or the operation of Borrowers' business;

(c) selling or attempting to sell some or all of the Receivership Property or disseminating, exchanging, providing, or soliciting any confidential or sensitive information regarding the same;

(d) committing waste upon the Receivership Property; or

(e) otherwise interfering with the operation of the Receivership Property, Borrowers' business, or the Receiver's discharge of its duties hereunder.

23. This Order shall be and remain enforceable by the contempt power of the Court. If the Receiver determines, after reasonable inquiry that a person or entity is in violation of the turnover provisions set forth in this Order, the Receiver shall give written notice thereof to the person or entity violating such provisions, with a copy of this Order attached, demanding turnover of such Receivership Property. If the person or entity in possession fails or refuses to turnover the Receivership Property after receiving such notice, the Receiver shall file a request for an order to show cause with this Court.

24. All lessors to the Receivership Property are hereby enjoined, for a period not to exceed ninety (90) days after entry of this Order, from seizing, or preventing the Receiver from taking possession of, the Receivership Property, or any portion thereof. Delivery of a copy of this Order on any such lessor shall serve as formal notice of this Order and such lessor's obligations under this paragraph.

25. All actions which are equitable in nature or purport to seek equitable relief against the Receiver, the Receivership Property, or the Receivership Estate are hereby stayed. All actions by any creditor, claimant, party in interest, governmental agency, and all other persons, firms, corporations, or entities seeking relief against the Receiver, Borrowers, the Receivership Property, or the Receivership Estate are stayed and may not be pursued without first seeking and obtaining leave from this Court. Any such action must be brought in this Court. However, the Colorado Department of Revenue shall not be stayed from sending any notices, including, without limitation, notices of deficiency and notices of final determination and demand for payment pursuant to C.R.S. § 39-21-103 to the Receiver on behalf of the Receivership Property or Receivership Estate.

26. Nothing in this Order shall be construed as interfering with or invalidating any lawful lien or claim by any person or entity.

27. Court approval of any motion or requests for authorization filed by the Receiver, shall be given as a matter of course, unless any party objects to the request for Court approval within seven (7) days after the service by the Receiver of written notice of such request upon anyone entering an appearance in this action or who is known to have a security interest in the Receivership Property or Receivership Estate or against the Collateral affected by the Receiver's motion or request for authorization. Service of motions by facsimile and electronic transmission is acceptable.

**Receiver's Compensation**

28. On a monthly basis, the Receiver may pay itself monthly as compensation for its services as Receiver at the hourly rate of $525.00 and others at Sonoran at the hourly rates between $225.00 to $325.00, as applicable, and to reimburse for customary expenses incurred. The Receiver's hourly rate as set forth herein is deemed reasonable, appropriate, and in the best interest of the Receivership Estate herein. Such amounts will be paid from funds collected by the Receiver, if sufficient, or from monies advanced to the Receiver by Plaintiff, by way of protective advance or Receiver Certificate at the election of Plaintiff, pursuant to this Order.

29. Within seven (7) days from entry of this Order, Plaintiff shall provide to the Receiver a $10,000.00 cost retainer, which shall be evidenced through a Receiver Certificate.

**Reporting**

30. The Receiver shall file with the Court and serve on parties of record, within sixty (60) days of entry of this Order, and on a quarterly basis thereafter, within twenty-five (25) days after the end of each quarter, full and complete reports, under oath, detailing receipts, disbursements and transactions concerning the Receivership Property, and the payment of the Receiver's, its counsel's, and any other professionals' compensation earned and reimbursement of expenses made during that quarter. Upon review and approval of such quarterly reports by this Court, such payments of compensation and reimbursement of expenses paid to the Receiver, its counsel, and any other professional shall be deemed reasonable and without future challenge as to reasonableness.

**Miscellaneous**

31. The Receiver shall take any and all actions it deems reasonable and appropriate to prevent waste and to maintain, manage, preserve, safeguard, and secure the Receivership Property and all other forms of property to which the Receiver is entitled to take possession and control under this Order.

32. The sheriff's office or other law enforcement officers in the county where the Receivership Property may be found are authorized and empowered to enforce the terms of this Order in the form of peace-keeping duties.

33. This Order is not intended to create a taxable entity. The Receiver shall not be responsible for the preparation of any tax returns for Borrowers, its members, or any of its respective affiliates. The Receiver is authorized to pay all current and past due assessments and taxes against any of the Receivership Property, but subject to approval in the event net operating income from the Receivership Property is insufficient to pay such assessments and taxes at any given time. The Receiver shall have no obligation to prepare or file federal, state, or any other tax returns or other tax-related documents on behalf of Borrowers, and the responsibility for such tax filings and payments lies exclusively with the members, officers, or shareholders of Borrowers;

provided, however, that the Receiver shall, if necessary, file grantor tax returns for the Receivership Estate detailing the receipts and disbursements of the Receivership Estate.

34. The Court appoints the Receiver as designee to receive and inspect Borrowers' confidential tax information from the Colorado Department of Revenue. This authorization (i) will apply to all of Borrowers' employees, officers, partners, or other agents, (ii) is effective for all tax periods and all tax and account types within the scope of section C.R.S. § 39-21-102, as in effect on the date of entry of this Order, and (iii) will automatically expire upon entry of an order discharging the Receiver herein.

35. The Receiver's actions in the performance and discharge of its duties are performed in a representative capacity as an officer of this Court. Except for claims of misfeasance or malfeasance in the performance of its duties, the Receiver is not and shall not be personally liable to any person or governmental entity under any law, statute, rule, regulation, or other doctrine of law or equity. Any claim alleging the Receiver's misfeasance or malfeasance must be made to this Court prior to the time the order discharging the Receiver is entered by the Court. All persons acting on behalf of the Receiver at the Receiver's request are protected and privileged with the same protections of this Court as the Receiver, including, without limitation, the officers, directors, employees, agents and contractors of Receiver.

36. The Receiver may resign and request with notice to Plaintiff and Borrowers entry of an order approving the Receiver's resignation and discharge; provided, however, that no such resignation shall take effect unless and until a substitute receiver recommended by Plaintiff is duly appointed over the Receivership Property.

37. The Receiver may from time to time request that the Court enter additional orders to amend, clarify, or supplement this Order.

38. The Receiver may apply at any time to the Court, with notice to all parties in this case, for further instruction or power necessary to enable the Receiver to fulfill its duties.

39. Court approval of any motion or requests for authorization filed by the Receiver shall be given as a matter of course, unless any party objects in writing to the request for Court approval within seven (7) days after service by the Receiver of written notice of such request upon anyone entering an appearance in this action. Service of motions by electronic transmission is acceptable.

40. Any time "approval" shall be required with respect to any action authorized in this Order, such action shall be authorized only if the Receiver obtains entry of further order of the Court.

41. In the event that a bankruptcy case is commenced by Borrowers during the pendency of this Receivership Estate, Plaintiff shall give notice of such bankruptcy case to the Court, all parties having appeared in this action, and to the Receiver on or before three (3) days after Plaintiff receives actual written notice of the bankruptcy case. Upon receiving knowledge of

any such case, the Receiver shall comply with its obligations under 11 U.S.C. § 543, unless Plaintiff simultaneously gives this Court and the Receiver notice of its intention to excuse turnover in the bankruptcy case and provides evidence that it has acted expeditiously in seeking excuse of turnover. If Plaintiff acts expeditiously to seek relief from the Receiver's obligation to turn over property, then the Receiver is authorized to remain in possession and preserve the Receivership Property pending the outcome of such motion in the bankruptcy case; provided that the Receiver's authority to preserve the Receivership Property under such circumstances is limited as follows: the Receiver may continue to collect the Receivership Property and the proceeds thereof; the Receiver may make disbursements necessary to preserve, maintain, and protect the Receivership Property; the Receiver shall not execute any new leases, sales contracts, or other long-term contracts; and the Receiver shall do nothing that would affect a material change in the Receivership Property. In addition to authority to retain counsel for other reasons as appropriate, the Receiver is authorized to retain legal counsel to assist the Receiver with any bankruptcy cases of Borrowers.

42. As necessary, the Receiver may record this Order in the real property records of any county in Colorado.

43. If Plaintiff assigns its interests in the Loan Documents and its entitlement to the Receivership Property or its proceeds to a third party, then such third party shall be the successor and assign of Plaintiff in connection with all obligations imposed upon, and all rights of, Plaintiff under this Order.

44. Unless otherwise provided in this Order, any computation of time for purposes of this Order shall be governed by C.R.C.P. 6.

45. The Receiver shall continue in possession of the Receivership Property until the Court terminates such possession and discharges the Receiver. The Receiver shall wind up the receivership expeditiously in cooperation with Plaintiff or otherwise at the direction of the Court. Upon the winding up of the Receivership Estate, the Receiver shall file its final report and accounting. If no objection to the final report and motion for discharge have been delivered to the Court, the Receiver, and other parties having entered their appearance in this action by first class mail to such address as is reflected in the Court records within seven (7) days after the final report and motion for discharge are filed with the Court, then the final report shall be accepted and adopted as a final order of the Court, and the Court shall enter an order terminating the Receivership Estate and discharging the Receiver.

Dated: January 22, 2026

District Court Judge

# **Exhibit 1**

All assets of Borrowers [Maverix LLC and Maverix Broadband, Inc.], whether now owned or existing or hereafter acquired or arising or in which Borrowers now have or hereafter acquire any rights, including, but not limited to, all of Borrowers' Accounts, chattel paper, deposit accounts, documents, Equipment, General Intangibles, goods, instruments, Inventory, Investment Property, letter-of-credit rights, letters of credit, intellectual property, and software; together with (i) all substitutions and replacements for and products of any of the foregoing; (ii) in the case of all goods, all accessions; (iii) all accessories, attachments, parts, equipment and repairs now or hereafter attached or affixed to or used in connection with any goods; (iv) all warehouse receipts, bills of lading and other documents of title now or hereafter covering such goods; (v) all collateral subject to the Lien of Secured Party [CooperReilly Investment Fund, LLC]; (vi) any money, or other assets of Borrowers that now or hereafter come into the possession, custody, or control of Secured Party; and (vii) proceeds of any and all of the foregoing.