# RECEIVER'S BILL OF SALE

This Receiver's Bill of Sale (the "Receiver's Bill of Sale") is made effective as of August 28, 2026 (the "Effective Date"), by Sonoran Capital Advisors, LLC, whose business address is 1733 North Greenfield Road, Mesa AZ, 85205 (as defined below, the "Receiver"), in favor of CooperReilly Investment Fund, LLC, a Georgia limited liability company, together with its successors, assigns, and nominees, whose business address is 4395 Harris Trail, NW, Atlanta, Georgia 30327 (the "Purchaser").

WHEREAS, on January 22, 2026, the District Court for the City and County of Denver, Colorado (the "Court") in Case No. 2026CV30150, styled CooperReilly Investment Fund, LLC v. Maverix LLC, et al. (the "Receivership Action"), issued its Order Granting Verified Motion for Ex Parte Appointment of Receiver (the "Order Appointing Receiver"). The Order Appointing Receiver appointed Sonoran Capital Advisors, LLC, as receiver in the Receivership Action (not acting in its own capacity but acting solely in its capacity as the duly appointed and acting receiver in the Receivership Action, the "Receiver").

WHEREAS, the Court appointed the Receiver to (among other things) liquidate the personal property of Maverix LLC, a Colorado limited liability company, and Maverix Broadband, Inc., a Colorado corporation (together, the "Company"), including but not limited to the personal property more particularly described in Exhibit A attached hereto (the "Personal Property") and to take any and all actions necessary to sell, lease, transfer, or otherwise deal with the Personal Property or proceeds thereof with prior Court approval.

WHEREAS, this Receiver's Bill of Sale is made pursuant to the Order Granting Receiver's Motion to Approve Sale of Certain Receivership Estate Property and Purchase Agreement, entered by the Court in the Receivership Action on August 28, 2026 (the "Order Authorizing Sale"), which approved that certain Asset Purchase Agreement by and among the Company, acting by and through the Receiver, and the Purchaser (the "Purchase Agreement").

NOW, THEREFORE, for and in consideration of the Purchase Price paid by the Purchaser to the Receiver pursuant to the Purchase Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, pursuant to the powers conferred upon the Receiver by the Order Appointing Receiver and the Order Authorizing Sale, the Receiver does hereby sell, assign, transfer, convey and deliver to the Purchaser all right, title and interest of the Company and the receivership estate in and to the Personal Property, free and clear of all claims (other than the Assumed Liabilities) and Liens (other than the Permitted Liens), each as defined in the Purchase Agreement.

THE PERSONAL PROPERTY IS SOLD "AS IS" AND "WHERE IS" AND "WITH ALL FAULTS", AND THE RECEIVER MAKES NO REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO THE PERSONAL PROPERTY, INCLUDING, WITHOUT LIMITATION, ANY (A) WARRANTY OF MERCHANTABILITY; (B) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; (C) WARRANTY OF TITLE; (D) WARRANTY AGAINST INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS OF A THIRD PARTY; OR (E) WARRANTY THAT THIS TRANSFER COMPLIES



EXHIBIT 4

WITH THE PROVISIONS OF THE UNIFORM COMMERCIAL CODE; IN EACH CASE, WHETHER ANY SUCH REPRESENTATION WOULD ARISE BY OPERATION OF LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE OR OTHERWISE. BY ACCEPTING THE PERSONAL PROPERTY AND THIS BILL OF SALE, PURCHASER ACKNOWLEDGES THAT IT HAS NOT RELIED ON ANY REPRESENTATION OR WARRANTY MADE BY THE RECEIVER OR ANY OTHER PERSON ON THE RECEIVER'S BEHALF.

TO HAVE AND TO HOLD the same unto Purchaser, its successors and assigns forever.

(Signature page follows)

In witness whereof, the Receiver has executed this Receiver's Bill of Sale effective as of the Effective Date.

**RECEIVER**

SONORAN CAPITAL ADVISORS, LLC,
AN ARIZONA LIMITED LIABILITY
COMPANY, SOLELY IN ITS CAPACITY AS
THE COURT-APPOINTED RECEIVER FOR
THE ASSETS IN THE RECEIVERSHIP
ACTION

By: ______________________________
Name: Bryan Perkinson
Title: Receiver for Maverix Broadband Inc. and Maverix LLC, solely in his capacity as Court-Appointed Receiver and not individually

For the Receiver

# EXHIBIT A

## The Personal Property

Capitalized terms used but not defined in this Exhibit A shall have the meanings set forth in that certain Asset Purchase Agreement, dated as of May 8, 2026 (the “Purchase Agreement”), by and among Maverix LLC, a Colorado limited liability company, and Maverix Broadband, Inc., a Colorado corporation (together, the “Company”), each acting by and through the Receiver, and CooperReilly Investment Fund, LLC, a Georgia limited liability company (the “Purchaser”).

All of the Company’s right, title and interest in and to all property, assets, interests and rights of every nature, tangible and intangible (real or personal, now existing or hereafter acquired, whether or not reflected on the books or financial statements of the Company), other than the Excluded Assets, including, without limitation, all intellectual property, Fixed Assets, inventory, warranties, indemnities and all similar rights against third parties, books and records, and including the following:

(a) All Customer Accounts.

**(b)** All rights of the Company under the Assumed Contracts and Assumed Leases, including, without limitation, those set forth on Schedule 2 to the Purchase Agreement, including but not limited to: (i) Zayo Orders No. 2260272 and 2143939; (ii) Lease for the NOC cabinet at 910 15th Street, Denver, CO 80202; (iii) Lease with Tommy Thrasher, Sr. for the storage yard at 1490 CR 186, Parker, CO 80138; (iv) Lease with David Lindauer to access telecommunications equipment on his property located at 2755 Winter Way Parker, CO 80138; (v) Lease with Tyler Bartholomew to access telecommunications equipment on his property located at 7200 Inspiration Dr Parker, CO 80138
(vi) License with Viath, Inc. (or any other party) to the CRM; (vii) any other licenses, agreements, leases, easements, or other agreement that Purchaser deems necessary for the operation of the Non-Grant Network.

**(c)** All of the Company’s right, title, and interest in all of its Fiber Medium used in connection with the Non-Grant Network and Fiber Assets, including, without limitation, all fiber hung on utility poles and associated equipment and agreements; all underground fiber and conduit and associated agreements; and all cabinets and enclosures placed in a public or private right of way or easement.

**(d)** All Systems and network equipment relating to the Non-Grant Network, including, without limitation but not limited to: (i) all equipment and assets located at David Lindauer’s property and Tyler Bartholomew’s property; (ii) all equipment and assets located at 910 15th Street, Denver, CO; (iii) any and all equipment, inventory, assets and components located at other properties not otherwise specified herein; and (iv) any and all equipment, inventory, assets and components owned by the Company located at Customer locations.

(e) All Prepaid Expenses which arise from or relate to any of the Acquired Premises, including, without limitation, all security deposits under Assumed Leases, and all utility deposits.

(f) All goodwill and other intangible assets including, without limitation, all rights in and to all intellectual property owned or used by the Company in connection with any of the Acquired Assets or any of the Acquired Premises, including, without limitation, the Autonomous System Number(s) in use by the Company in connection with the Non-Grant Network; the names associated with the Business; phone numbers and domain names (including, but not limited to, maverixbroadband.com and mx-bb.com); the right to use existing telephone numbers, fax numbers, keys and codes for any security systems, to the extent transferable or assignable; rights under equipment warranties; building/construction warranties or other warranties, to the extent transferable or assignable; plans, engineering, and work related to the Non-Grant Network that is in-process by the Company; Non-Grant Network architecture, infrastructure, permitting and network/customer maps of the Company; Internet Protocol space relating to the Non-Grant Network issued by the American Registry of Internet Numbers to the Company, along with the accompanying documentation of such space. For the avoidance of doubt, the foregoing includes all logins, usernames, passwords, credentials, access keys, and administrative access to and control over all software systems, platforms, applications, portals, accounts, and third-party websites and services currently used to operate, monitor, bill for, maintain, or otherwise support the Non-Grant Network, together with all historical records, data, and information contained in or accessible through any of the foregoing, all of which shall be transferred and delivered to the Purchaser at or promptly following the Closing.

(g) All books and records relating to taxes imposed on the Acquired Assets or with respect to the Business.

(h) All advertising, marketing and promotional materials, drawings, brochures, creative materials, artwork, photographs and other printed or electronic materials.

(i) All books, financial information, records, files, ledgers, documentation, instruments, research, papers, data, marketing materials and information, sales or technical literature or similar information in the possession or control of the Company, including equipment records, files, receipts, and assignment documentation.

(j) All cash and cash equivalents, checks, checks in transit, credit card receivables, money orders, funds in time and demand deposits or similar accounts, marketable securities, short-term investments, and other cash equivalents and liquid investments.

(k) All Accounts Receivable.

(l) All insurance policies of the Company and all rights of any nature with respect to any such insurance policy, including all claims and proceeds under such insurance policies, and including workers' compensation insurance and related letters of credit, cash or other assets that serve as collateral with respect thereto.

(m) Any rights to tax refunds and claims related thereto, to the extent related to any period (or portion thereof) ending on (and including) or prior to the Closing Date.

(n) All Permits, including, but not limited to, those set forth on Schedule 1 to the Purchase Agreement, that relate to the Non-Grant Network.

(o) All Customer lists, databases, and data, including names, email addresses, phone numbers, purchase history, and any other related information.

(p) A comprehensive list of all current and former factories, suppliers, and vendors used in connection with the design, production, distribution, packaging, handling, manufacturing, sales, and servicing of the Company's products and services, including contact information and order history.

(q) The equipment set forth on Schedule 3 to the Purchase Agreement, including, without limitation: (i) 2017 Vermeer PTX40 (Remote) vibratory plow, S/N 1VR8072T2H1000168; (ii) 2020 Bobcat E-35 mini excavator, S/N B3WZ15212; (iii) 2021 Bobcat T-76 skid steer, S/N B4CE16533; (iv) one hydrovac/pothole cleaner (year, make, model and serial number unknown); and (v) 2022 Vermeer D8x12 Navigator drill/boring unit (serial number unknown).

For the avoidance of doubt, any Fiber Assets that are part of the Grant Network that are essential, useful, or necessary for the continued operation of the Non-Grant Network are included in the Personal Property. Unless disclosed by the Company with contemporaneous written documentation evidencing the grant funding of an asset, interest, or right, all Fiber Assets shall conclusively be deemed not to be an asset, interest, or right funded by grant funding and shall constitute part of the Personal Property.

Notwithstanding anything to the contrary in the foregoing, the Personal Property does not include, and the Receiver does not sell, assign, transfer, convey or deliver, any of the Excluded Assets, which include: (i) all bank accounts; (ii) all outstanding amounts relating to Governmental Authority programs, including, without limitation, the Employee Retention Credit, the Broadband Equity, Access and Deployment program under the Infrastructure Investment and Jobs Act, Capital Projects Fund programs, Colorado Broadband Deployment Board programs, and any other Financial Assistance Programs; (iii) all employee benefit plans; (iv) all Contracts other than Assumed Contracts and all Leases other than Assumed Leases; (v) all capital stock and equity interests in and to each of Maverix LLC and Maverix Broadband, Inc.; (vi) any claims of the Company or its respective estates against any Person of every kind and description, or against any director, officer, insider, auditor, or accountant of the Company; (vii) all organizational documents, qualifications to conduct business as a foreign corporation, arrangements with registered agents relating to foreign qualifications, taxpayer and other identification numbers, seals, minute books, stock transfer books, stock certificates, and other documents relating to the organization, maintenance, existence and operation of the Company, and books and records, correspondence or communications to the extent related to taxes paid or payable by the Company, any claims, obligations or liabilities not included in the Assumed Liabilities, or the Purchase Agreement, any Transaction Documents or the negotiation or consummation of the Transactions (including any attorney-client privilege associated therewith); (viii) all of the Company's rights under any Excluded Assets; and (ix) all inter-company receivables and inter-company payables, none of which shall be enforceable against the Purchaser or the Personal Property.

The Personal Property is sold subject to the Permitted Liens and is otherwise conveyed free and clear of all claims (other than the Assumed Liabilities) and Liens, in each case as provided in the Purchase Agreement and the Order Authorizing Sale.